IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA KLOPFENSTEIN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL SALES AND | : | |
| SUPPLY, LLC, | : | No. 07-4004 |
| Defendant. | : | |

## MEMORANDUM & ORDER

Schiller, J.                                                                                June 5, 2008

Plaintiff Tamara Klopfenstein brings the current action against Defendant National Sales and Supply, LLC ("National Sales & Supply"), alleging that she was the subject of sexual harassment, gender discrimination, and retaliation during her employment with Defendant. Currently before the Court is Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. For the reasons discussed below, Defendant's motion is granted and Plaintiff's motion is denied.

## I.      BACKGROUND

Plaintiff worked as a part-time receptionist for National Sales & Supplies for six weeks. She interviewed for the position in mid-2006 with Richard Blum, a vice president with the company. (Def.'s Statement of Undisputed Facts [hereinafter SOF] ¶ 5; Pl.'s SOF ¶ 3.) Following the interview, Blum remarked on Plaintiff's employment application that she "Looks nice, dresses well." (Pl.'s Mot. for Summ. J. [hereinafter Pl.'s Mot.] Ex. D (Employment Application).) Plaintiff was hired and began work the following week. (Def.'s SOF ¶ 2; Pl.'s SOF ¶¶ 2, 5; Pl.'s Mot. Ex. B (Pl.'s

Dep.) at 16-19.)  Her formal title was "receptionist/data entry."  (Pl.'s SOF ¶ 5; Def.'s SOF ¶ 2.)

Soon after she began, Plaintiff became the subject of what she perceived to be unfavorable treatment.  On October 19, 2006, Plaintiff received an email from Mike Sanchez, a sales manager with the company, but not one of Plaintiff's supervisors.  The email stated: "Hey, I was thinking maybe we should go to lunch on Friday together?........Thoughts?  I feel bad you have been working here for a couple of weeks and we haven't gotten to know each other yet[.]" (Def.'s Mot. Ex. B (Pl.'s Dep. & Exs.).)  Plaintiff found this offensive because "[t]here is no reason why a man and a woman should go out to lunch together without any other party around.  To me that's a date.  That is a lunch date and that is very offensive to me."[1]  (*Id.* at 65.)

During the same time period, Plaintiff claims that she noticed a change in the demeanor of Sanchez and Jason Shrager, also a vice president at the company and one of Plaintiff's supervisors. Both men, overall, were less friendly and their collective attitude toward Plaintiff was "short."  (Pl.'s Mot. Ex. B at 79, 81-82.)  On one occasion specifically cited by Plaintiff, she entered Shrager's office for a meeting, and found Shrager and Sanchez whispering, giggling and laughing, and would not respond to her when she inquired what the joke was about.  (Pl.'s Mot. Ex. B at 60-61.)

By and large, however, the gravamen of Plaintiff's grievances arose from an ongoing dispute over Plaintiff's responsibility to serve coffee to her male supervisors.  On several occasions, Plaintiff

---

[1] There appears to be some confusion surrounding the author of the email.  Plaintiff testified at her deposition that when she confronted Sanchez about the email, he said Jason Shrager, one of Plaintiff's supervisors, wrote the email.  (Pl.'s Mot. Ex. B at 73.)  In her EEOC Complaint, however, Plaintiff wrote that "Mr. Shrager was *informed* of [the email] and found it to be amusing."  (Pl.'s Mot. Ex. A (EEOC Compl.).)  Sanchez testified that he wrote the email and that he did not recall any conversations about Shrager writing the email.  (Def.'s Mot. Ex. E (Sanchez Dep.) at 24.)  The originator of the email is not material for the purposes of this memorandum.

was asked by Rich Blum and Jason Shrager to bring them coffee; Plaintiff stated during her deposition that after the first few weeks at work, the requests were made almost daily.  (Pl.'s Dep. Ex. B at 46-47; Def.'s Mot. Ex. D at 49.)  Although this was not part of the job description, as it was explained to Plaintiff in her interview, her supervisors did expect her at times to get them coffee.  (*See* Def.'s Mot. Ex. D at 38-39, 49; Pl.'s Mot. Ex. F (Oct. 26-27, 2006 Email).)  The individuals who held the position of receptionist before Plaintiff were required to do so, and they performed the task without objection.  (Def.'s Mot. Ex. D at 49.)

Although Plaintiff acquiesced once or twice by bringing coffee to Shrager and Blum, she found these requests demeaning and embarrassing.  (Pl.'s SOF ¶ 10; Pl.'s Mot. Ex. B at 104.)  Plaintiff explained at her deposition that the requests to serve her employers not only "reinforced outdated gender stereotypes," but bordered on harassment; she stated that, on three separate occasions, someone had entered a reminder in her electronic calendar that coffee was due at 3:00 p.m.  (Pl.'s Mot. Ex. B at 54, 79-80.)

By October 26, 2006, the controversy was really brewing.  On that day, Shrager again asked Plaintiff to bring him coffee.  (Pl.'s SOF ¶ 11; Def.'s Resp. to Pl.'s SOF [hereinafter Def.'s Resp. SOF] ¶ 11.)  Plaintiff refused Shrager's request.  (Pl.'s SOF ¶ 12; Def.'s Resp. SOF ¶ 12.)  He followed up with an email:  "Tami, I want to be clear so there are no misunderstandings . . . 1 [sic] of your many responsibilities as a receptionist / customer service rep is making and getting coffee for Rich and I [sic].  This is not open for debate.  Please don't make an easy task a big deal."  (Pl.'s SOF ¶ 13; Def.'s Resp. SOF ¶ 13; Pl.'s Mot. Ex. F.)  Blum was also listed as a recipient of that email.  (*Id.*)

Upon arriving to work the next day and receiving the email, Plaintiff responded to both

3

Shrager and Blum by email:

> I don't have a problem getting coffee and/or water for our guests
> when they come in.  I don't expect to serve and wait on you by
> making and serving you coffee every day at 3:00.  If I would have
> known that when I took the job, I would never have taken the job.  I
> will be more than happy to sit down and talk to you about this matter.

(Pl.'s Mot. Ex. F.)  Nine minutes after Plaintiff's email, Blum responded: "I'm sorry it didn't work

out so please pack up your things.  We will send you your last check next week."  (*Id.*)

After reading this email, and with the understanding that her job had already been terminated,

Plaintiff went into Blum's office and asked if she would be permitted to work for the remainder of

the day.  (Def.'s SOF ¶ 42; Pl.'s Resp. to Def.'s SOF [hereinafter Pl.'s Resp. SOF] ¶ 42.)   Blum

explained that she would be paid regardless of whether she finished the work day, but that she could

stay if that was her preference.  (Def.'s SOF ¶ 44; Pl.'s Resp. SOF ¶ 44.)  As she was leaving his

office, Plaintiff explained to Blum that she would be filing "a complaint," which Blum properly

understood to mean an EEOC grievance. (Def.'s SOF ¶ 45; Pl.'s Resp. SOF ¶ 45.) Blum then asked

Plaintiff to pack her things and leave without finishing the day.  (Def.'s SOF ¶ 46; Pl.'s Resp. SOF

¶ 46.)  Plaintiff left the office soon thereafter.  (Def.'s Mot. Ex. C (Blum Dep. at 24-25).)  She was

paid a full day's salary.  (Def.'s SOF ¶ 47; Pl.'s Resp. SOF ¶ 47.)

According to Defendant, Blum and Shrager had discussed terminating Plaintiff's job as early

as one week before she was actually fired.  (Def.'s Mot. Ex. C at 16 & Ex. D (Shrager Dep.) at 47-

48.)  They stated that Plaintiff had failed to pass along important phone calls, placed the wrong

pricing labels on packages for customers and potential customers, improperly packed parcels,

mispronounced customer names, and forgot to offer coffee to office guests. (Def.'s Mot. Ex. C at

13-14 & Ex. D at 17-18, 36-41.)  According to Defendant, Plaintiff's email was the proverbial last

straw.  (Def.'s Mot. Ex. C at 18 & Ex. D at 48.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial.  *Anderson*, 477 U.S. at 248.  In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.   DISCUSSION

Plaintiff raises claims of retaliation, sexual harassment, and gender discrimination under Title VII of the federal code and pursuant to the Pennsylvania Human Relations Act ("PHRA").  *See* 42 U.S.C. § 2000e *et seq.*; 43 PA. CONS. STAT. ANN. § 955 *et seq.*  "Claims under the PHRA are interpreted coextensively with Title VII claims."  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6

(3d Cir. 2006); *see also Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.5 (3d Cir. 1997).  Because Plaintiff cannot show direct evidence of discrimination, her Title VII retaliation and gender discrimination claims are subject to the burden shifting-analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (retaliation); *Atkinson*, 460 F.3d at 454 n.7 (gender discrimination).  Under that framework, Plaintiff must first establish a *prima facie* case of discrimination, in accordance with the standards set forth below.  *See McDonnell Douglas*, 411 U.S. at 802.  If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to assert a legitimate, non-discriminatory reason for the adverse employment decision.  *Id.* at 802-803.  If Defendant sets forth such a reason, the burden shifts back to Plaintiff, who must then proffer evidence that the employer's reason is merely a pretext for discrimination.  *Id.* at 804.

### A.     Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation

Both Defendant and Plaintiff have moved for summary judgment on the issue of retaliation. On this issue, the parties are in complete agreement about the facts, and utter disagreement on the law.  According to Plaintiff, when Blum prevented her from completing the work day on October 27, 2006, immediately following her disclosure that she intended file an EEOC complaint, he committed an act tantamount to unlawful retaliation.  Defendant replies that Blum's acts were irrelevant – Plaintiff was already fired from her position when Blum asked her to leave for the day and she was paid for a full day of work.

A plaintiff has a cause of action for retaliation under Title VII if she: (1) engaged in protected activity; (2) was subsequently or contemporaneously subject to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.  *EEOC v. L.B.*

*Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997); 42 U.S.C. § 2000e-3(a) (2008).  Here there is no question that Plaintiff was engaging in a protected activity when she stated that she planned to file an EEOC complaint, nor is there a significant question of causation – Blum asked Plaintiff to leave immediately after she stated her intention to bring a claim against Defendant.  *See L.B. Foster Co.*, 123 F.3d at 754 (plaintiff who informs employer of her intentions to file charges engages in a protected activity).  The central inquiry is whether Blum engaged in an "adverse action" by sending Plaintiff home early, albeit with pay and after her job was already terminated.

To be actionable, an adverse action must be "material," which is to say that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  Title VII "does not set forth 'a general civility code for the American workplace.'" *Id*. at 68.  Rather, it is intended to prohibit those employer actions that could deter an employee from complaining to his or her supervisors or from seeking a remedy with the EEOC or in the civil justice system.  *Id*.  The standard is an objective one and takes into consideration the context in which the retaliatory act is taken.  *Id.*  "The real social impact of work-place behavior often depends on a constellation of surrounding circumstances, expectations, and relationships," all of which are relevant in determining whether an action was materially adverse.  *Id.* at 69.

Based on the facts of this case, there is insufficient evidence to conclude that Plaintiff suffered a materially adverse action.  Mindful of the fact that access to Title VII's remedial mechanisms should be "unfettered," the Court concludes that no reasonable person would be dissuaded from accessing those mechanisms under these circumstances.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  On October 27, 2006, when Plaintiff entered Blum's office, her job

had already been terminated.  This was to be her last day of work.  Before she made any mention of filing a complaint, Blum informed Plaintiff that she would be compensated for the entire day regardless of whether she actually worked.  Plaintiff's argument that declining her request to finish a day of work (although not depriving her of one day's worth of pay) amounts to a materially adverse action is utterly unpersuasive.  The reasonable worker would not be disuaded from pursuing a charge of discrimination due to his or her employer's post-termination hostilities – if anything, such a worker's resilience in pursuing those charges would likely be emboldened.

Plaintiff's reliance on *Hairston v. Gainesville* is misplaced.  9 F.3d 913 (11th Cir. 1993).  In that case, the Eleventh Circuit held that a journalist who was suspended with pay for thirty-days suffered an adverse action, actionable under the Age Discrimination in Employment Act.  *Id.*  This Court agrees with the Eleventh Circuit that a "suspension," with or without pay, can amount to an adverse employment action; a suspension can negatively affect an employee's advancement at work and, overall, his or her employee-employer relationship.  This was the case in *Hairston*, where the Plaintiff's suspension was recorded in his disciplinary record and contributed to his eventual termination.  However, a suspension necessarily contemplates a continued employment relationship, which is not present in this case.  Plaintiff was already terminated when Blum asked her to leave and, after Plaintiff's comments about filing a complaint, Blum moved her departure forward by a number of hours.  These facts cannot form the basis of a retaliation claim.[2]  Accordingly, Plaintiff's motion

---

[2] In an alternate theory, which Plaintiff does not develop in her own motion for summary judgment, but which she includes briefly in response to Defendant's motion, Plaintiff argues that she was retaliated against for failing to serve coffee to Blum and Shrager.  Under this theory, Plaintiff alleges that her refusal to serve coffee to her supervisors is an activity protected under Title VII.

This theory also must fail.  "Protected activities" include filing charges of discrimination or complaints about unlawful conduct, and may include informal complaints to management.

for partial summary judgment must be denied, and Defendant's motion on this issue will be granted.

**B.    Plaintiff Cannot Establish a *Prima Facie* Claim of Sexual Harassment**

"A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the sexual harassment was either a *quid pro quo* arrangement, or if the harassing was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986); *see also* 42 U.S.C. § 2000e-2. Here, Plaintiff alleges both hostile work environment and *quid pro quo* sexual harassment claims.

*i.    Hostile work environment*

To establish a hostile work environment claim, a plaintiff must demonstrate that: "(1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews v. City of Phila*, 895 F.2d 1469, 1482 (3d Cir. 1990). A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Harris v. Forklift Sys., Inc.*,

_____

*See Curay-Cramer v. Ursuline Acad. of Wilmington*, 450 F.3d 130, 135 (3d Cir. 2006). However, Plaintiff's complaints do not explicitly or implicitly allege unlawful gender discrimination. In her email, Plaintiff said she "doesn't expect to serve and wait on" her employers and mentions nothing about the subservient gender roles of which she now complains. (*See* Pl.'s Mot. Ex. F; Pl.'s Mot. Ex. B at 104-105.) "A general complaint of unfair treatment does not translate into a charge of [gender] discrimination." *Barber v. CSX Distribution Svs.*, 68 F.3d 694, 702 (3d Cir. 1995) (plaintiff's complaints did not specifically allege age discrimination and, therefore, were not a protected activity); *see also Moore.*, 461 F.3d at 341 (employee's opposition to unlawful discrimination must be unequivocal to be protected). Plaintiff's subjective expectations about her job responsibilities do not amount to an allegation of discrimination or unlawful conduct. Accordingly, this theory also fails as a matter of law.

510 U.S. 17, 21 (1993).

In making out a hostile work environment claim, a claimant need not show sexual overtones in each instance. *Andrews*, 895 F.2d at 1485. "Intimidation and hostility toward women, because they are women, can obviously result in conduct other than explicit sexual advances." *Id.* (*citing Hall v. Gus Const. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1998)).  At least one judge in this district has included in the category of harassment "'behavior that creates a barrier to the progress of women in the workplace because it conveys the message that they do not belong, that they are welcome in the workplace only if they will subvert their identities to the sexual stereotypes prevalent in that environment.'"  *Stair v. Lehigh Valley Carpenters Local Union No. 600*, Civ. A. No. 91-1507, 1993 WL 235491, at *20 (E.D. Pa. July 24, 1993) (*quoting Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1523 (M.D. Fla. 1991)).  Finally, whether a workplace is hostile or abusive must be determined in light of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Plaintiff argues that she was the subject of a hostile work environment because she was "compelled to perform servile tasks for her male supervisors," namely, get them coffee.   The act of getting coffee is not, by itself, a gender-specific act.   The Court recognizes that in the context of other indicators of sexism, getting coffee could evince a discriminatory intent.   *See King v. Auto, Truck, Indus. Parts and Supply, Inc.* 21 F.Supp.2d 1370, 1379 (N.D. Fla. 1998) (prima facie case of discrimination established where, in addition to being the subject of derogatory comments and sexually lewd-behavior, plaintiffs were repeatedly asked to run errands for her supervisors including

10

picking up lunch, beer, cigarettes, dropping off laundry, and paying personal bills).  However, the record is barren of any such supporting evidence in this case.  There is no evidence of spoken or written statements, demeaning or otherwise, relating even tangentially to sex or gender.  There is no evidence of physical gestures intended to intimidate Plaintiff as a woman or motivated by animus toward woman.  Other than asking Plaintiff to bring Blum or Shrager coffee, there is no indication that Plaintiff was asked to perform any acts that conform to traditional gender-specific stereotypes, either inside or outside of the workplace.  The other incidents that Plaintiff points to in support of her claim – Sanchez's email, Blum's note that Plaintiff "looks nice," the change in Sanchez and Shrager's behavior, and the reminders in her calendar – are innocuous and unsupportive of Plaintiff's claim of harassment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (Title VII harassment claims not intended to encompass "simple teasing, offhand comments and isolated incidents (unless extremely serious)").

On the other hand, the record does show that getting coffee for Blum and Shrager was one responsibility associated with Plaintiff's position as receptionist.  Receptionists before Plaintiff were required to get coffee for Blum and Shrager.  Additionally, Plaintiff was required to get coffee for office guests in addition to supervisors, although Plaintiff did not find this requirement demeaning.  There seems to be little in the record, other than Plaintiff's own subjective speculation, to indicate that Plaintiff was treated differently "because of her sex." *Andrews*, 895 F.2d at 1482. Accordingly, Plaintiff's hostile work environment claim must fail.

ii.      *Quid pro quo*

*Quid pro quo* harassment occurs when an employer demands sexual favors from his or her employee in exchange for employment benefits or to avoid an adverse employment action. *Kraus*

11

*v. Howroyd-Wright Employment Agency, Inc.*, Civ. A. No. 06-975, 2008 WL 90325, at *13 (E.D. Pa. Jan. 8, 2008). To establish such a claim, a plaintiff must demonstrate "either that she submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual advances." *Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 133 (3d Cir. 1999); *see also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997) ("[U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.").

Plaintiff's claim of *quid pro quo* harassment must fail because she cannot show that any of her supervisors made sexual advances toward her. The only conduct which Plaintiff even characterizes as a sexual advance was the email from Sanchez which, as described above, asks Plaintiff to lunch. (Def.'s Mot. Ex. B.) Sanchez's email is entirely innocuous, if not friendly, and is void of a suggestive or sexual undertone. Furthermore, even if Plaintiff could show that the email constituted an advance, she has not shown that she suffered any tangible employment action as a result of her refusal to acquiesce in Sanchez's lunch invitation. Sanchez was not Plaintiff's supervisor, he played no role in the decision to terminate Plaintiff, and there is no evidence that Plaintiff's lunch refusal played any role in Blum or Shrager's decision to terminate Plaintiff. *See Baker v. Boeing Helicopters*, Civ. A. No. C1-3565, 2004 WL 1490358, at *6 (E.D. Pa. June 30, 2004) (advances of a co-worker, who lacked the ability to alter plaintiff's employment status, could not form basis for *quid pro quo* claim). The notion that this email could form the basis of a sexual

harassment claim is so untenable that it appears Plaintiff is no longer pursuing this theory. (*See generally* Pl.'s Resp.)

Instead, Plaintiff argues that the Court should abandon the legal requirement that an employer engage in a sexual advance to make out a *quid pro quo* claim, and argues instead for a "quasi" *quid pro quo* framework. Under Plaintiff's theory, the requirement that an employee conform to an outdated gender stereotype should also trigger a *quid pro quo* analysis. Significantly, Plaintiff has not cited to any case adopting a "quasi" *quid pro quo* framework. The Court declines Plaintiff's invitation to create new law. Furthermore, even under Plaintiff's statement of a "quasi" *quid pro quo* framework, her claim would fail. As discussed above, Plaintiff has failed to show any discriminatory motive or intention to pigeonhole Plaintiff into a gender stereotype.

### C.   Plaintiff Cannot Establish a *Prima Facie* Claim of Gender Discrimination

Plaintiff alleges disparate treatment based on her gender in violation of Title VII of the Civil Rights Act of 1964. To state a prima facie case for gender discrimination, the plaintiff must: (1) be a member of a protected class; (2) be qualified for the position; (3) suffer an adverse employment decision; and (4) show that the adverse action occurred "under circumstances that give rise to an inference of unlawful discrimination." *Tx. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also* 42 U.S.C. § 2000e-2(a). "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Morris v. G.E. Fin. Assurance Holdings*, Civ. A. No. 00-3849, 2001 WL 1558039 at *5 (E.D. Pa. Dec. 3, 2001). However, the elements of a prima facie case for gender discrimination vary depending on the facts and context of each situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d

344, 352 (3d Cir. 1999).

As discussed at length above, the isolated fact that Plaintiff was required to get coffee for her supervisors cannot independently establish "circumstances that give rise to an inference of unlawful discrimination," as a matter of law. *Burdine*, 450 U.S. at 253. Additionally, the Court notes, Plaintiff cannot argue that she was treated differently than other similarly situated employees of a non-protected class. There is only one receptionist in the office. Further, no men have held that position before, during, or after her tenure at National Sales & Supply. *See Nelson v. Hebrew Hospital Home, Inc.*, Civil A. No. 94-5455, 1996 WL 143869, at*1 (S.D.N.Y. Nov. 9, 1995) ("[Plaintiff] is unable to show disparate treatment because of her gender since there were no males in similar jobs.") (*citing Mammay v. J. Arthur Dosher Memorial Hosp.*, 885 F.2d 865, 1989 WL 106982, at*3 (4th Cir. 1989).) Plaintiff has not argued, nor has there been any evidence, that the position was restricted to women. *Id.* Under these circumstances and in accordance with the discussion above, the Court holds that Plaintiff cannot make out a prima facie claim of gender discrimination.


IV.     **CONCLUSION**

In sum, while the behavior of Plaintiff's supervisors and co-workers may have been rude, gauche, or undesirable, their actions do not violate federal or state anti-discrimination laws. As such, there are no grounds for Plaintiff's claims.

An appropriate Order follows.

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMARA KLOPFENSTEIN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL SALES AND** | : | |
| **SUPPLY, LLC,** | : | **No. 07-4004** |
| **Defendant.** | : | |

## <u>ORDER</u>

**AND NOW**, this **5th** day of **June**, **2008**, upon consideration of the following motions, following oral argument on June 4, 2008, and for the foregoing reasons, it is hereby **ORDERED** that:

1.  Plaintiff's Motion for Partial Summary Judgment (Document No. 10) is

    **DENIED**.

2.  Defendant's Motion for Summary Judgment is **GRANTED** (Document No. 13) is

    **GRANTED**.

3.  Defendant's Request for Permission to File a Reply Brief (Document No. 21) is

    **DENIED**.

4.  The Clerk of Court is directed to close this case for statistical purposes.


                                        BY THE COURT:

                                        _____
                                        **Berle M. Schiller, J.**